IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.                                                    16-CR-62-A

SHERROD OGLETREE,

                Defendant.
_____

## GOVERNMENT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, by and through its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, and Trini E. Ross, the undersigned Assistant United States Attorney, respectfully files this sentencing statement.

## PRELIMINARY STATEMENT

On January 28, 2016, the defendant was charged in a criminal complaint with violation of Title 18, United States Code, Sections 2251(a) and 2252A(a)(2)(A). On February 5, 2016 the defendant appeared before Magistrate Judge H. Kenneth Schroeder, Jr. for his initial appearance on the charges at which time the government moved for detention. On February 11, 2016, following a detention hearing, the Court ordered the defendant to be detained pending further proceedings.

On June 1, 2016, the defendant appeared before this Court and plead guilty to a two count Information. Count one charged violations of Title 18, United States Code, Sections

2251(a) and 2251(e), Production of Child Pornography.  Count two charged violations of Title 18, United States Code, Sections 2261A(2)(B), 2265A(a) and 2261(b)(5), Cyberstalking.

On July 29, 2016, a Presentence Report ("PSR") determined that the total offense level in this case should be 33 (PSR ¶85).  The PSR also determined that the defendant had a criminal history category of II. (PSR ¶¶80, 85).  As a result, the PSR determined the defendant's sentencing range as 151 months to 188 months, however, since the statutory minimum sentence is greater than the guideline range, the guideline range is 180 months to 188 months.  (PSR ¶85; USSG §5G1.2(b)).

## STATEMENT OF FACTS SUMMARY

The government concurs with and relies on the very detailed statement of facts set forth in the PSR at paragraphs 18 through 39.

In sum, OGLETREE victimized two minor females by using a fake profile on Facebook, under the name of "Mrss Guwop", which falsely represented that he was a 22 year old female.  The Mrss Guwop fraudulent profile was used by the defendant to lure young women to communicate with him.  In doing so, the defendant had MV2, a 15-year old female, send him pornographic images of herself during which he instructed her regarding the photos she should take and send to him.  Specifically, OGLETREE instructed MV2 to take nude photos of herself including "pussy pics tits and ur ass" photos, and directed her to send them to the false Facebook account.  MV2 complied with the defendant's directive and took and sent the photos.

OGLETREE also used the fraudulent Mrss Guwop profile in an attempt to force MV1, also a 15-year old female, to engage in commercial sex acts for money. OGLETREE threatened and Cyberstalked MV1, using brutal threats and scare tactics, by telling her that if she did not comply with commercial sex acts he would reveal to her friends, and family members, conversations between him and MV1 during which they discussed her engaging in commercial sex acts. Further, when MV1 asked what she could do to prevent OGLETREE from revealing the conversations to her family and friends, OGLETREE attempted to extort money, items and sex from MV1 in exchange for her not being forced to engage in commercial sex acts and not revealing their conversations regarding same.

OGLETREE intended to follow through with his extortion of MV1 as is indicated by the facts - he gave her an address for her to meet him, sent her a photograph of himself so MV1 would know how he looked when she arrived and was at the address he sent to MV1, waiting for her when she arrived with the police. Furthermore, when OGLETREE saw the police, he ran inside, locked the door and hid until he was apprehended.

## DISCUSSION

I. **In Considering the §3553(a) Factors, this Court Should Conclude That a Guideline Sentence of Imprisonment Provides the Proper Punishment for the Offenses of Conviction**

The government recognizes that since <u>United States v. Booker</u>, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, and must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). The United States

contends that a sentence of 180 months to 188 months, which is the advisory guideline range, is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). Based on the facts of this case as outlined above, the government is requesting a sentence within the guideline range.

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. See United States v. Rattoballi, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress . . . . It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider."). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court that imposes a sentence outside the applicable advisory guidelines range must do so on notice to the parties and must state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so. 18 U.S.C. § 3553(c).

Based on the § 3553(a) factors, as set forth below, the government respectfully submits that a guideline sentence of between 180 months and 188 months and is warranted.

A. **The Nature and Circumstances of the Offense Warrant a Guideline Sentence**

As set forth in the PSR, the defendant engaged in the production of child pornography and cyberstalking of two 15-year old victims.

Child pornography has been an issue of growing concern for the past several years and sentences for offenses relating to child pornography have steadily increased. Both Congress and the Supreme Court have determined that the eradication of child pornography and the punishment of child pornography offenders are important government objectives aimed at protecting our nation's children and their families. Children must be protected from the physical and psychological harms they can face as a result of their exploitation through child pornography. In 2003, Congress passed the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), Public Law 108-21, in an effort to curb the growing problem of child pornography. This Act increased the penalties for child pornography offenses, and its subsequent amendments added further increases for various factors such as the number of images involved, whether the child depicted was under the age of 12, and whether the images involved sadistic or masochistic conduct. History of the Child Pornography Guidelines, United States Sentencing Commission, Oct. 2009, at 38, 40 (available at http://www.ussc.gov/general/20091030_History_Child_Pornography_ Guidelines.pdf). Congress justified these harsher sentences for child pornography offenders by stating that protecting children from those who attempt to sexually exploit them is a "compelling government interest," and that this interest extends to all levels of the "vice of child pornography." PROTECT Act, § 501 (quoting Osborne v. Ohio, 495 U.S. 103, 110 (1990)). See also Hobbs v. County of Westchester, 397 F.3d 133, 150 (2d Cir. 2005) (citing

New York v. Ferber, 458 U.S. 747, 757 (1982)) ("The government has... an interest 'of surpassing importance' in preventing the sexual exploitation of children.").

Congress also sought to restrict the Courts' ability to grant downward departures from the Guidelines for child pornography offenses. The standard for a downward departure in cases of child pornography offenses differs from that of other offenses, requiring "any mitigating circumstances that form the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure." Commentary to § 5K2.0, Scope of Policy Statement 4(B)(I). Both the enhanced sentences of the PROTECT Act and this requirement of specificity when identifying the grounds for a downward departure highlight Congress's desire to severely punish child pornography offenders.

The recitation of facts relating to MV2 in the PSR reveals that the defendant's conduct regarding MV2 was completely within the scenario based on the rational for Congress's passing the PROTECT Act, to curb the growing problem of child pornography.

Based on the horrific acts perpetrated by OGELTREE on the two minor victims in this case, coupled with the seriousness of the production of child pornography offense, clearly weighs in favor of a sentence between 180 and 188 months, as promulgated by the Guidelines, for the purposes of punishment and promoting deterrence. 18 U.S.C. § 3553(a)(1). Such would provide protection to the victims, and to potential future victims.

B.     **Child Pornography Is a Form of Child Abuse Which Presents a Clear and Present Danger to the Psychological and Social Welfare of the Country's Children**

Congress and the Supreme Court have recognized that the use and possession of child pornography are not passive acts. Each viewing of child pornography re-victimizes and exploits the child portrayed. The Senate Report on the PROTECT Act states that "encounters [of child pornography] cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of healthy, affectionate relationships in the future." Senate Report No. 95-438, at 40 (1977), (reprinted in 1978 U.S.C.C.A.N. 40, 43). In passing the Child Pornography Prevention Act of 1996 seven years earlier, the Senate made similar findings. Its report found that the "sexualization of minors creates an unwholesome environment which affects the psychological, mental and emotional development of children and undermines the efforts of parents and families to encourage the sound mental, moral and emotional development of children." Senate Report 104-358 § (11)(B). The Supreme Court has also recognized the harms children can face as a result of the proliferation of child pornography, stating that the "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child" that is used in its production. Osborne, 495 U.S. at 109.

A recent study explored the effects of online sexual exploitation on children and found that it often has detrimental effects on a child's mental health. Wells and Kimberly J. Mitchell, Youth Sexual Exploitation on the Internet: DSM-IV Diagnoses and Gender Differences in Co-Occurring Mental Health Issues, 24 Child and Adolescent Social Work Journal 235 (2007). The study found that, of a sample of children who had been exploited on

the internet, nearly half had experienced a mood disorder (mostly depression) and nearly a third had experienced an anxiety disorder. Id. Table 2, at 246-47. These children also faced a host of other issues as a result of their exploitation, including school and family problems, and a significant number experienced a "suicidal ideation or suicide attempt." Id. Tables 3 & 4, at 249, 252.

When a pornographic image of a child is viewed or distributed, these harmful psychological effects result. The best ways to protect children from these effects are to prevent the production of such images and to punish those who encourage their production. Each individual who views child pornography perpetuates both the demand for the images and the psychological harm inflicted on the child. "The 'victimization' of the children involved does not end when the camera is put away." United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998).

C. **Child Pornography Is Used by Sex Offenders as a Training Instrument to Induce Children to Participate in Sexual Acts**

The need to eradicate child pornography and to punish those who perpetuate its demand is further supported by the fact that child pornography is used to facilitate sexual acts with children. Child pornography is often used by child molesters and pedophiles as a means of forging a child's compliance with sexual acts. These individuals show the child pornographic images and insist that what the child is viewing is "normal." Brief of Amicus Curiae on Behalf of the National Center for Missing & Exploited Children at 15, Ashcroft v. The Free Speech Coalition, 535 U.S. 234 (2001). If a child is hesitant to engage in the sexual act, the molester may use such videos or images to show that the acts are "fun," by pointing

8

out that the children depicted appear to be enjoying themselves. Osborne, 495 U.S. at 111 n.7. Many children depicted in child pornography were seduced into sexual acts in this way. Amicus Curiae Brief at 16, Ashcroft v. The Free Speech Coalition.

The use of child pornography can make offenders more likely to seek out children and induce them to engage in sexual acts. Those who use child pornography eventually become desensitized to it, creating the desire to engage in sexual acts with a child. Dr. Victor B. Cline, Pornography's Effects on Adults and Children, Morality in Media, 8 (2001). This makes child pornography users a danger to children, as they may choose to act out their fantasies once they are no longer satisfied with pornography. Id. Access to child pornography can intensify an offender's arousal towards children and encourage a desire to engage in a sexual relationship with a child. Ethel Quayle and Max Taylor, Child Seduction and Self Representation on the Internet, 4 Cyberpsychology & Behavior 597, 606 (2001). Stopping the use of child pornography can help to prevent the use of child pornography from evolving into the sexual abuse of a child. This requires severe punishments for those who choose to use and possess child pornography.

    **D.**    **The History and Characteristics of the Defendant Warrant a Term of Incarceration within the Sentencing Guideline Range**

The defendant's history with the victims in the instant case mandates that he be incarcerated for a sentenced advised by the Sentencing Guidelines.

In the instant case, the crimes of conviction are particularly heinous and extremely disturbing because they involve the production of child pornography and cyberstalking of a

9

minor to try to extort and engage in sexual conduct with that minor. A review of the Facebook exchanges between the defendant and the minor victims clearly shows that the defendant used psychological methods to coerce MV2 to send him pornographic photographs of herself and that he attempted to extort money, valuable items from, and sexual contact with, MV1. OGLETREE used threats of exposure to family and friends, people who are essential to the lives of the 15-year old victims, and coercion, such as the lure of money, to engage each of the minor victims and to get them to comply with his requests. The violence displayed and the lack of basic human decency exhibited by OGLETREE regarding these young victims is reason enough to incarcerate him for a significant period of time.

Based on the defendant's actions in this case, a sentence within the Sentencing Guideline's advisory range, should be imposed.

### E.     The Victims Are Entitled to Restitution

Pursuant to Title 18, USC, §§ 3663A, 2259(a) and 2264 restitution in this case is mandatory. Section 2259(a) mandates that the court must order the defendant to pay restitution for the full amount of the victims' compensable losses, up to $250,000 as agreed to in the Plea Agreement, as determined by the Court.

In the instant case, the government has not received any documentation from the victims of losses they incurred, or of future expenses they will incur.

## CONCLUSION

For the foregoing reasons, and taking into account all of the 18 U.S.C. § 3553 factors, the defendant should be sentenced to a term of incarceration within the advisory guidelines range.

DATED:  Buffalo, New York, September 9, 2016.

WILLIAM J. HOCHUL, JR.
United States Attorney

BY:   /s/  TRINI E. ROSS
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5805
Trini.Ross@usdoj.gov